***NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GINO A. RICCA, | : | Civil Action No.: 09-5883 (FLW) |
| Plaintiff, | : | **OPINION** |
| v. | : | |
| JOHN J. ANASTASIO, | : | |
| Defendant. | : | |

**WOLFSON, District Judge:**

This matter comes before the Court on two separate motions to dismiss filed by Defendant John J. Anastasio, Esq. ("Defendant"). Specifically, Defendant moves to dismiss Plaintiff Gino A. Ricca's ("Plaintiff") legal malpractice claims based upon, inter alia, Plaintiff's failure to file an affidavit of merit and the statute of limitations. The allegations giving rise to the instant Complaint stem from alleged legal malpractice by Defendant, in the course of his representation of Plaintiff in a 1988 bankruptcy proceeding. After receiving the parties' submissions in connection with the motions, pursuant to Federal Rule of Civil Procedure 12(f), the Court converted the statute of limitations aspect of Defendant's motion to dismiss to a motion for summary judgment. In light of this procedural conversion, the Court instructed the parties to file additional materials that they deemed necessary to resolve the instant dispute. The Court is now prepared to render its decision, and for the reasons stated below, Defendant's motion is GRANTED on the basis that Plaintiff's Complaint is barred by the applicable statute of limitations.

1

## I.  FACTS

Unless noted otherwise, the following facts are undisputed by the parties.  Plaintiff was the accountant for Applejack, Inc. (Applejack), a New Jersey Corporation and gasoline retailer, from 1978 to 1982.  See Def.'s Cert. Ex. C at p. 107.  From 1976 to 1983, Pedroni Fuel Co. ("Pedroni"), a gasoline distribution company, supplied gasoline to Applejack but apparently was never paid for its services.  See Id.  Applejack filed for bankruptcy in 1983.  Id.

In a 1987 state court proceeding, Pedroni "sought to impose personal liability for the corporate debt of Applejack, Inc. on [Plaintiff] and other[s]." Id. at 108.  Pedroni sued Plaintiff because, as the accountant for Applejack, Plaintiff was alleged, inter alia, to have "constituted a fraud upon Pedroni, violated the New Jersey Business Corporation Act, N.J.S.A. 14A:6-1, et seq., in that his actions violated his corporate director's duty of good faith, and violated the New Jersey Uniform Fraudulent Conveyance Act, N.J.S.A. 25:2-7, et seq." Id.  The state court entered a judgment against Plaintiff (the "Pedroni Judgment").  Id.  In an oral decision, the court "held that there was a causal relationship between the loss suffered by Pedroni and the activities of [Plaintiff] in misappropriating corporate funds and allowing others to misappropriate corporate funds." See Id. at p. 88-89 (citing transcript of Oral Decision, February 10, 1987).

After the state court entered the Pedroni Judgment against him in 1987, Plaintiff filed for Chapter 7 bankruptcy in 1988, and retained Defendant to represent him in that bankruptcy proceeding.[1]  Compl. at ¶¶ 3, 8.  Defendant also represented Plaintiff in an Adversary proceeding

---

[1]  Plaintiff is no stranger to the bankruptcy system: prior to 1988, Plaintiff filed for bankruptcy in 1969 and in 1982.  Def.'s Cert. Ex. A at pp. 15, 24 and Ex. B at p. 64.  Defendant did not represent Plaintiff in any of his bankruptcies besides the 1988 bankruptcy proceeding.  See Compl. at ¶¶ 17-25.

in connection with the 1988 bankruptcy brought by Pedroni, requesting that the Bankruptcy Court declare the Pedroni Judgment to be a non-dischargeable debt. Compl. at ¶ 8; Def.'s Cert. Ex. C at p. 80. In ruling against the Plaintiff in the adversary proceeding, the Bankruptcy Court found "that the [Pedroni] judgment was entered against [Plaintiff] for fraud and defalcation while serving a fiduciary capacity," and held that the Pedroni Judgment "was not discharged and remained in full force and effect." Id.

In 1994, Plaintiff filed his fourth bankruptcy, pro se, and hired another attorney, David Warshaw, Esq., to represent him in an adversary proceeding related to that bankruptcy.[2] See Plaintiff's Aff. at ¶¶ 24, 32. Plaintiff avers that the 1994 adversary proceeding stemmed from a default judgment entered against him in his 1988 bankruptcy. Id. at ¶¶ 28-29. Plaintiff acknowledges that, at that time, he knew that Defendant had allegedly failed to represent him in a previous adversary proceeding in connection with Plaintiff's 1988 bankruptcy, which resulted in a default judgment.[3] Id. Ultimately, the 1994 adversary proceeding was dismissed.

In 2007, approximately 19 years after Plaintiff's debt to Pedroni was held to be non-dischargeable, Pedroni sought to renew and enforce the Pedroni Judgment against Plaintiff. Compl. at ¶ 8c. After Plaintiff received notice of the 2007 motion to renew the Pedroni Judgment, he met with Joseph Albanese, Esq., who opined that Defendant had committed malpractice in his representation of Plaintiff in the 1988 bankruptcy proceeding. Id. According to Albanese, Defendant "negligently performed his duties, causing damage to the Plaintiff, including but not limited to failing to counsel [Plaintiff] as to converting his Chapter 7 to a

---

[2]   In his 1994 bankruptcy, Plaintiff listed his 1987 Pedroni Judgment on his Schedule F.

[3]   The Court notes that Defendant's failure to represent Plaintiff in this 1988 adversary proceeding is not one of the bases of Plaintiff's legal malpractice claims.

3

Chapter 13 for purposes of protecting him from the entry of an order by the Bankruptcy Court determining the Superior Court Judgment to be non-dischargeable." See Id. at ¶ 8d. Approximately two years after meeting with Albanese in 2007, Plaintiff filed the instant Complaint on August 3, 2009, twenty one years after Defendant represented Plaintiff in the 1988 bankruptcy proceeding. Id. at ¶ 8c. The Complaint alleges, inter alia, that Defendant committed malpractice. Id. at ¶ 8d.

Subsequently, Defendant filed two motions to dismiss. In his first motion to dismiss, Defendant argues, inter alia, that Plaintiff's Complaint was not timely filed and therefore is barred by the six-year statute of limitations period applicable to Plaintiff's legal malpractice claim. In his second motion to dismiss, Defendant alleges that Plaintiff failed to timely serve an affidavit of merit on Defendant as required by New Jersey's Affidavit of Merit Statute, N.J.S.A. 2A:53A-27. On June 16, 2010, the Court converted the statute of limitations aspect of Defendant's motion to dismiss to a motion for summary judgment. In deciding these motions, the Court will first discuss the threshold issue of whether Plaintiff failed to file an affidavit of merit.

## II.   STANDARD OF REVIEW

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir.2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed.R.Civ.P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir.2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a

4

genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir.2002).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F.Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or ... vague statements...'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs., 982 F.2d 884, 890 (3d Cir.1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir.1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.  DISCUSSION

#### A.  Affidavit of Merit

"The legislative intent in enacting the Affidavit of Merit Statute was to curtail the filing of frivolous malpractice actions." Zamft v. Cornell, 309 N.J. Super. 586, 593 (App. Div. 1998). The Statute is triggered by "the filing of the defendant's answer." Newell v. Ruiz, 286 F.3d 166, 171 (3d Cir. 2002) (citing N.J.S.A. 2A:53A-27). "Failure to provide either the affidavit or the sworn statement within 60 days, or 120 days if the court grants an extension for good cause, results in dismissal for 'failure to state a cause of action.'" Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (quoting N.J.S.A. 2A:53A-29).

The question presented in this case is whether the filing of Defendant's motion to dismiss triggered the requirement for Plaintiff to serve an affidavit of merit. This issue is one of first impression for this district.   Indeed, it is apparent that other courts have not evaluated whether other filings besides "answers" have triggered the New Jersey Affidavit of Merit Statute's service requirement.  However, it is clear that courts applying New Jersey's Affidavit of Merit Statute routinely reiterate the requirement that a plaintiff must serve an affidavit of merit in response to a defendant's "answer" within 60 days, or within 120 days if "good cause" is shown. See, e.g., Chamberlain, 210 F.3d at 158 (citing N.J.S.A. 2A:53A-29); see also Barreiro v. Morais, 318 N.J.

6

Super. 461, 470 (App. Div. 1999) ("the [New Jersey Affidavit of Merit] statute allows a plaintiff a maximum of 120 days in which to file the affidavit"). Specifically, the requirement that an "answer" triggers the time period in which plaintiff must serve an affidavit of merit is supported by Third Circuit precedent. See, e.g., Newell, 286 F.3d at 171 (noting that "the 'trigger' to start the time clock in the New Jersey statute is the filing of the defendant's answer"). The Court need not address this issue, however, since the present case is barred by the statute of limitations.

### B. Statute of Limitations

Under N.J.S.A. 2A:14-1, a plaintiff must file a legal malpractice claim "within six years from the accrual of the cause of action." Vastano v. Algeier, 178 N.J. 230, 236 (2003) (citing Grunwald v. Bronkesh, 131 N.J. 483, 499 (1993)) (citations omitted). Typically, the statute of limitations begins to run "when an attorney's breach of professional duty proximately causes a plaintiff's damages." Grunwald, 131 N.J. at 492. Therefore, "the statute of limitations does not commence until 'the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." Vastano, 178 N.J. at 236 (quoting Grunwald, 131 N.J. at 494).

To accommodate situations in which "a client would not reasonably be aware of the underlying factual basis for a cause of action," New Jersey courts apply "the discovery rule" to "those cases in which the injury or wrong is not readily ascertainable through means of reasonable diligence." Grunwald, 131 N.J. at 492-93. "The discovery rule focuses on 'an injured party's knowledge concerning the origin and existence of his injuries as related to the conduct of another person . . . . Such knowledge involves two key elements, injury and fault." Id. (quoting Lynch v. Rubacky, 85 N.J. 65, 70 (1981). The rule "encompasses two types of plaintiffs: those who do not

become aware of their injury until the statute of limitations has expired, and those who are aware of their injury but do not know that it may be attributable to the fault of another." Grunwald, 131 N.J. at 493 (citing Burd v. New Jersey Tel. Co., 76 N.J. 284, 291-92 (1978)).

In the seminal New Jersey legal malpractice case, Grunwald, the plaintiff, Abraham Grunwald, hired the defendant, attorney Noah Bronkesh, and Bronkesh's law firm, to help Grunwald "negotiate an option agreement for the sale of certain real property in Atlantic City to Resorts International Hotel and Casino, Inc. (Resorts)." Grunwald, 131 N.J. at 488. "Bronkesh prepared an option agreement and attached a contract of sale for Resorts' approval....Resorts signed the option agreement, but instead of initialing the attached contract to indicate acceptance of its form, Resorts signed the contract as well." Id. Grunwald claimed that instead of asking Resorts why it signed instead of initialed the contract, "Bronkesh advised Grunwald that by signing the agreement Resorts had entered into an enforceable contract to buy the property." Id. Grunwald further claimed that relying on Bronkesh's statements, he "bypassed another opportunity to develop the property" that Resorts allegedly had agreed to buy. Id. Resorts never bought the property. Id.

Grunwald brought a legal malpractice claim against Bronkesh "more than six years after the Chancery Division's decision," alleging that he missed an opportunity to develop the property by relying on Bronskesh's statements and "that he ha[d] incurred substantial legal fees in litigation against Resorts." Id. at 488-89. In his malpractice action, Grunwald also alleged "that neither his trial attorney nor appellate counsel suggested that he had a possible cause of action against Bronkesh and the law firm." Id. The Supreme Court of New Jersey "conclude[d] that damage occurred when Resorts refused to close on the property after Grunwald had bypassed another offer," and that "knowledge of fault was satisfied when the Chancery Division delivered its opinion

8

in the underlying action in Grunwald's presence." Id. Since "[t]he discovery-rule elements, knowledge of injury and of fault, were satisfied on July 31, 1984," the court further held that Grunwald's claim was barred by the six-year statute of limitations period, because the statute began to run on July 31, 1984, and Grunwald had commenced his malpractice action against Bronkesh on September 28, 1990, almost two months after the statute of limitations had expired. Id.

Years later, the New Jersey Supreme Court in Vastano applied Grunwald's reasoning and barred the plaintiffs' malpractice claims because the claims were untimely filed. In that case, the plaintiffs brought a malpractice suit against their lawyer for the lawyer's failure to provide certain discovery, which led to the exclusion of plaintiff's economic expert's testimony at trial and in turn, affected the amount of damages the jury awarded the plaintiffs. Vastano, 178 N.J. at 233. The plaintiffs also asserted that the lawyer failed to inform them of an earlier settlement offer, which was higher than the amount the jury ultimately awarded, that had been rejected before trial and had been renewed during the course of the jury's deliberation. Id. The plaintiffs brought the malpractice claim more than six years after the jury rendered its verdict on damages. Id.

Refusing to apply the discovery rule, the court held that, "with respect to [the defendant attorney's] derelict trial performance, that the statute of limitations began to run upon the return of the unsatisfactory damages award and, with respect to the 'uncommunicated settlement offer,' when plaintiffs took possession of their file from [the defendant attorney]." Id. at 238-42. The court reasoned that because the plaintiffs were intimately involved with the trial, and that they had possession of the trial transcripts on November 15, 1990, "through the exercise of reasonable diligence, plaintiffs knew or should have known of the consequences of [the defendant attorney's] failure to supply discovery and that his professional errors were a likely cause of the 'insufficient'

9

damages verdict . . . . Plaintiffs had six years to file their claim from that date, and yet, they did not do so." Id. at 239. Thus, the filing of Plaintiffs' claim on December 23, 1996, was beyond the limitations period. Id.

In the instant action, in light of the principles of the discovery rule set forth by the New Jersey Supreme Court, Plaintiff's malpractice claims are time barred. At the time Plaintiff received an adverse judgment in 1988, he was certainly aware of "the essential facts underlying his claim." Vastano, 178 N.J. at 240. Although "a plaintiff's ability to discover the facts may be frustrated by an attorney who keeps critical information from him," Id. at 241, here, Plaintiff was fully apprised of the facts surrounding the alleged malpractice when the Bankruptcy Court in 1988, relying on the prior state court decision, found the Pedroni Judgment to be non-dischargeable. Indeed, there is no claim by Plaintiff that Defendant withheld certain information from him in 1988, except for the alleged negligent act. Additionally, at that time, Plaintiff suffered actual injury by incurring a non-dischargeable debt, which Plaintiff was required to pay despite his bankruptcy. Therefore, the discovery rule does not apply because Plaintiff had knowledge, or should have reasonably been aware, of the underlying facts and he suffered actual damages; the statute of limitations started to run in 1988 at the moment the adverse Pedroni Judgment was found to be non-dischargeable.

Nevertheless, Plaintiff argues that he was unaware of Defendant's malpractice until he subsequently met with a new attorney in 2007. Plaintiff's argument is unpersuasive. Even if the Plaintiff was unaware of the attorney's alleged malpractice in 1988 -- that a conversion of Plaintiff's prior Chapter 7 bankruptcy proceeding to a Chapter 13 would purportedly have

protected him from the non-dischargeable debt[4] – in 1994, approximately six years later, Plaintiff should have reasonably known that Defendant was allegedly negligent in the course of Defendant's representation of Plaintiff in 1988. Indeed, Plaintiff retained new counsel for an adversary proceeding in his 1994 bankruptcy. Importantly, the 1994 adversary proceeding stemmed from a default judgment entered in another adversary proceeding during Plaintiff's 1988 bankruptcy, which, Plaintiff alleges, resulted from Defendant's failure to defend him. Because of Defendant's alleged failure, Plaintiff expressed dissatisfaction with Defendant's legal representation to his then-attorney. While mere expression of dissatisfaction may not trigger the duty of reasonable diligence to discover facts, as Plaintiff argues, Plaintiff was not merely dissatisfied; indeed, Plaintiff knew that Defendant may have committed malpractice for failing to defend him in a separate adverse proceeding in 1988. Clearly, Plaintiff was on notice of Defendant's alleged negligence and had a duty of inquiry as to Defendant's overall representation. In that regard, in 1994, Plaintiff was certainly aware of the Pedroni Judgment and its impact since he disclosed the judgment on his Schedule F.

"The accrual of the cause of action is not governed by the date when plaintiffs <u>actually</u> learned of the [defendant attorney's alleged negligence] if that information was reasonably discoverable at an earlier time." See Vastano, 178 N.J. at 242 (emphasis in original). Faced with another bankruptcy, and the existence of Pedroni Judgment at the time of the 1994 bankruptcy proceeding, Plaintiff certainly should have discovered any and all alleged negligence that

---

[4]   Plaintiff argues that Defendant was negligent because "Defendant never advised [Plaintiff] of the option of a Chapter 13 bankruptcy given the 1987 Pedroni Judgment, never informed [Plaintiff] that he could have used money from his wife, son, and money owed from the sale of his accounting practice to fund a Chapter 13 Plan, and never recommended that [Plaintiff] convert the Chapter 7 to a Chapter 13 once Pedroni commenced the adversary proceeding." Pl.'s Br. in Further Opp'n to Def.'s Mot. to Dismiss at p. 6.

Defendant committed years ago, particularly since Plaintiff had the assistance of another counsel in an adversary proceeding directly related to the 1988 bankruptcy, and he was on notice of Defendant's alleged negligent act – albeit it did not relate to the conversion issue.  Indeed, any issues relating the Pedroni Judgment should have been discovered in 1994, regardless of whether the Pedroni Judgment itself was the subject of the 1994 bankruptcy, as Plaintiff seems to suggest.  Therefore, even if the discovery rule would have applied in 1994, the statute of limitations had long expired when Plaintiff filed the instant action in 2009.  Furthermore, inexplicably, Plaintiff did not file this malpractice action in 2007 when he was advised that there might be a potential claim against Defendant; rather, Plaintiff waited another two years, until 2009, to file this action.

Moreover, the New Jersey Supreme Court has cautioned that, with respect to the discovery rule, which is equitable relief, "[a] system that would permit a plaintiff to commence a malpractice claim fifteen years after an attorney renders allegedly negligent advice is simply unacceptable . . . . Such a potential outcome would frustrate the purposes of limitations periods: to protect against the litigation of stale claims; to stimulate litigants to prosecute their claims diligently; and to personalize dilatoriness." Grunwald, 131 N.J. at 497 (citations omitted).  Even the dissent in Grunwald agreed that "[s]uch a result is greatly to be avoided." Grunwald, 131 N.J. at 504.   The present case far exceeds fifteen years, the time period that the Grunwald court cautioned would be unacceptable.  Since Plaintiff's claim, filed twenty-one years after Defendant allegedly committed the malpractice, is an example of a case "greatly to be avoided," and there is no basis to apply any equitable remedy, the Court holds that Plaintiff's legal malpractice claims against Defendant are barred by the statute of limitations.

For the foregoing reasons, Defendant's motion is GRANTED.


DATED:  August 2, 2010

                                                    /s/ Freda L. Wolfson  
                                          The Hon. Freda L. Wolfson  
                                          United States District Judge